E-FILED
Friday, 25 September, 2026 01:14:35 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| DEVON CARL MABRY,<br>Plaintiff,<br><br>v.<br><br>JONATHAN EK,<br>Defendant. | Case No. 2:24-cv-02007-JEH-EIL |

**Order**

Plaintiff, Devon Carl Mabry, brought this suit pursuant to 42 U.S.C. § 1983. He is represented by Court-recruited pro bono counsel. He alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

Before the Court is Defendant's Motion for Summary Judgment. Dkt. 74. Plaintiff has filed a Response. Dkt. 97. Defendant has filed a Reply. Dkt. 98.

For the reasons discussed below, Defendant's Motion for Summary Judgment is granted.

**I**

The following facts are undisputed except as specifically addressed.

Plaintiff was in prison in the Illinois Department of Corrections (IDOC) at Danville Correctional Center as a post-conviction, post-sentencing detainee at all relevant times. UMF 1. Plaintiff has no formal education in the field of medicine. UMF 9. Plaintiff filed suit on July 31, 2023, alleging Dr. Ek exhibited deliberate indifference to Plaintiff's serious medical needs related to diagnosis and treatment of heart failure. UMF 2, 3. Plaintiff is not pursuing claims related to occurrences after December 16, 2022. Dkt. 75 at 16-17.

At the relevant time Defendant Dr. Ek was employed as a medical doctor to provide care, within his scope of practice, for inmates at Danville. UMF 4. During Plaintiff's incarceration at Danville, Dr. Ek provided Plaintiff with medical care. UMF 8. Dr. Ek was not responsible for receiving and handling inmates' sick call requests or grievances. UMF 5. Plaintiff responds to the entirety of UMF 5 by neither admitting or denying it but asserting a lack of knowledge. As UMF 5 is supported by admissible evidence of record it is established for purposes of this Order, and to the extent Plaintiff's response can be viewed as a dispute, it is not supported by any evidence and therefore does not create a genuine issue of fact. See Local Rules 7.1(D)(2)(b)(2), (6).[1] Ek was not responsible for scheduling inmates' visits to medical, scheduling inmates' visits to outside providers, or ensuring their appearance at medical appointments. UMF 5.

Dr. Ek was not required to perform medication pass duties at Danville as a part of his employment. UMF 6. Rather, after he prescribed medication, the nursing staff and/or prison staff were responsible for obtaining and passing out medication as prescribed. *Id.* Additionally, he was not responsible for creating or maintaining the medication administration records for inmates. *Id.* As a provider, after entering medical orders Dr. Ek was allowed to rely on the nurses and prison staff to execute those orders properly and to provide prescribed medications as ordered. UMF 7.

On October 24, 2022, Plaintiff submitted a sick call request indicating that he was having trouble breathing, had noise in his lungs, and had a tight chest. UMF 10; AMF 31. Plaintiff's sick call request also indicated that he had one lung

---

[1] No evidence is identified alongside any of Plaintiff's nominal disputes of Defendant's UMFs in Plaintiff's Response. So, to the extent Defendant's UMFs are supported by admissible evidence of record they are deemed established for summary judgment purposes.

removed or partially removed at some point in the past. Dkt. 97-3. Plaintiff was seen at 10:15 p.m. that same day by a nurse. UMF 10; Dkt. 97-4. The nurse took Plaintiff's vitals. UMF 10. Plaintiff's respiratory rate was elevated at 22, his heart rate was elevated at 135 beats per minute, and his blood pressure was elevated up to 144/101. *Id.* The nurse completed an EKG and then reported her findings to Dr. Ek. UMF 10. Plaintiff's AMF 33 and AMF 34 repeatedly characterize Plaintiff's EKG results as "very abnormal." The cited exhibit does not support those characterizations. Dkt. 97-4. Plaintiff asserts, "The nurse informed Plaintiff the findings revealed many irregularities consistent with a heart attack on the computerized EKG summary." This assertion is unsupported by the cited evidence, Dkt. 97-4.

Plaintiff's affidavit, Dkt. 97-1, provides partial support, though he does not cite it in support of this fact. Nonetheless the Court will assess its evidentiary value. Plaintiff avers that the nurse told him that his EKG was very abnormal and included "irregularities like a heart attack." Dkt. 97-1 at ¶7. These assertions are hearsay and Plaintiff does not explain how they can be considered for their truth.

Next, Plaintiff asserts that the nurse "called Dr. Ek to inform him of my condition and the abnormal EKG findings," and that "Dr. Ek stated my medical condition was not serious enough for further medical attention and ordered that I be sent back to my … cell." *Id.* In this second aspect, Plaintiff's affidavit relays a verbal act by the nurse, and it is reasonable to infer Plaintiff has personal knowledge of it as the act is temporally situated during the course of his visit with the nurse that evening. While it is not admissible for the truth of what the nurse said, it is admissible for the fact that she said it to Dr. Ek. And Plaintiff can aver to what Dr. Ek said in response, as it is a statement of a party opponent, and again a reasonable inference exists that Plaintiff was present and personally heard Ek's statement.

Plaintiff asserts, "the EKG performed on the Plaintiff on October 24, 2022, has gone missing from the Plaintiff's medical records." AMF 35. Neither party has cited an EKG summary or report; nor has any party established that a physical report or summary was created when the EKG was taken, or, if so, what happened to it, when, why, or by whom. There is no inference to be drawn for either party from the non-existence in the record of such material.

Dr. Ek took the report from the nurse and used his medical judgment to prescribe Metoprolol daily for one year and a one-time dose of Clonidine. UMF 11. Dr. Ek did not order a transfer to the emergency department, or order blood oxygen levels to be checked, blood work, or a chest x-ray. AMF 32. After the nurse administered medications, Plaintiff's blood pressure decreased to 125/89 and his heart rate decreased to 90. Dkt. 97-4.

Plaintiff was not brought to the attention of Dr. Ek at any time between October 25 and November 6. UMF 12. Plaintiff was seen at healthcare by other providers as follows during that period:

On October 26, Plaintiff presented to healthcare complaining of "breathing problems all the time." AMF 36. On October 26 or 27, Plaintiff submitted a sick call request complaining of trouble breathing since Sunday October 23 and asking to be seen by the doctor as soon as possible; Dr. Ek did not evaluate Plaintiff at that time. AMF 37. On October 28, Plaintiff presented to healthcare complaining of shortness of breath at 11:30 p.m.; his oxygen was very low at 89%. AMF 38. Dr. Ek did not evaluate Plaintiff at that time. *Id.* There is no indication Dr. Ek was made aware of Plaintiff's vitals at or near that time.

On November 7, Dr. Ek saw Plaintiff in connection with Plaintiff's complaints of shortness of breath, nausea, body swelling, and diarrhea. UMF 13; AMF 39. Dr. Ek heard Plaintiff's complaints and examined him. UMF 13. Dr. Ek used his medical judgment to determine that Plaintiff was likely suffering from a

viral illness, and that he was stable at this time. *Id.* Dr. Ek ordered a chest x-ray as well. *Id.* Plaintiff was not brought to the attention of Dr. Ek at any time between the dates of November 8 and November 29.

On November 11, an x-ray was taken of Plaintiff's chest. AMF 40. Plaintiff characterizes the x-ray as "very abnormal," and asserts that the radiology technician told Plaintiff so, but both of those assertions are unsupported by evidence. Plaintiff asserts that the chest x-ray has gone missing from Plaintiff's records. AMF 41. Defendant has located and docketed the radiology report. Dkt. 100-1. It states:

> Exam: Chest 2 views
> Reason For Exam: Prior history left chest stab wound 2006; shortness of breath x2 weeks
>
> **FINDINGS:** Patient is status post median sternotomy; transverse cardiac diameter is mildly prominent this may reflect AP technique. No airspace consolidation or active infiltrate seen. No evidence for effusion, or overt interstitial edema, pleural and diaphragmatic surfaces are unremarkable. Bony thorax is intact. Visualized mediastinum demonstrates minimal elongation of the descending thoracic aorta no aneurysm.
>
> **Impression:** Status post median sternotomy changes. Transverse diameter of the heart is at the upper limits of normal to mildly enlarged; no evidence for overt interstitial edema, or failure identified. No effusion seen, no active infiltrates. Correlate clinically.

Dkt. 100-1. The x-ray showed no signs of edema, infiltrate, or heart failure. UMF 13.

On November 29, Plaintiff continued to experience nausea and vomiting. AMF 42. On November 30, Plaintiff was seen by a nurse in connection with complaints of vomiting. UMF 15. Plaintiff was evaluated by the nurse and his

vitals were normal. *Id.* Plaintiff's complaints and the nurse's findings were reported to Dr. Ek. UMF 16. In response, Dr. Ek ordered that Plaintiff undergo a panel of labs to further assist in diagnosing any ailments. UMF 16. Plaintiff was seen by a nurse on December 2 with complaints of pain in his legs, pitting edema, and shortness of breath. UMF 17. This occurrence was reported to Dr. Ek who then ordered that the patient be brought to him to be seen. *Id.* Dr. Ek saw Plaintiff on December 7, heard his complaints, and performed an examination. UMF 18. In consideration of all the information available to him, Dr. Ek used his medical judgment to determine that Plaintiff may be suffering from hepatitis. *Id.* As such, Dr. Ek ordered labs for hepatitis C, Zofran for one month, and an ultrasound of the liver. *Id.* Dr. Ek also indicated that a Fibroscan of the liver would be considered. *Id.* Lastly, he ordered that Plaintiff follow up in two weeks. *Id.*

On December 14, Plaintiff's weight was 181.6, an approximate increase of 24.6 pounds since he was weighed on September 3. AMF 43. That same day at 9:25 p.m. Plaintiff's heart rate was documented at 167 bpm. *Id.* Dr. Ek did not order Plaintiff transferred to the emergency department. *Id.* There is no indication that Dr. Ek was aware of Plaintiff's heart rate until the following day. Dkt. 97-11. Plaintiff characterizes a heart rate of 167 as "a critical level," but does not provide evidentiary support for that assertion. Plaintiff asserts in his affidavit that "Dr. Ek would not send me to the hospital." Dkt. 97-1 at ¶ 19.

On December 15 at 11:00 a.m. healthcare staff informed Dr. Ek of Plaintiff's elevated heart rate of the prior evening, and his weight gain. AMF 45. Dr. Ek performed a review of Plaintiff's chart on December 15 to determine the lab results and necessary next steps. UMF 19. Plaintiff's labs showed mild elevations. *Id.*; AMF 45. Considering all the information available to him, Dr. Ek used his medical judgment to determine that Plaintiff may be suffering from a possible gallstone with biliary 5 obstruction. UMF 19. As such, Dr. Ek found it best to have the

Plaintiff sent to the emergency department the next morning for further work up. *Id.* Dr. Ek's note indicates it was entered at 5:50 p.m. on December 15. Dkt. 76-1 at 4-6.

Plaintiff was taken to the emergency department on December 16, where he was later diagnosed with heart failure. UMF 19; AMF 46. He had significant heart damage with a low cardiac ejection fraction, and is now awaiting a heart transplant, having been discharged from prison under a compassionate release program through IDOC. AMF 47.

Each time Plaintiff was brought to his attention Dr. Ek considered Plaintiff's case and used his medical judgment in effort to diagnose and treat Plaintiff under the circumstances presented to him. UMF 21. This included (among other things) examining the Plaintiff, ordering scans, ordering labs, ordering medications, and ultimately sending the Plaintiff to the emergency department for a higher level of care. *Id.*

The parties present the following opposing sworn statements:

Dr. Ek states that he never refused to provide Plaintiff with medical treatment nor did he ever ignore Plaintiff in relation to the condition complained of in the Complaint. UMF 29. Plaintiff cites no evidence in his purported dispute of this fact.

Plaintiff meanwhile states, "Dr. Ek ignored my complaints when I complained of chest pains and shortness of breath and when I asked to go to the hospital." Dkt. 97-1 at ¶22.

Plaintiff was 36 years old at the relevant time. Dkt. 97-12. It is quite rare for young, otherwise healthy individuals such as the Plaintiff to develop heart failure. UMF 22. As such, the diagnosis of heart failure in young patients can sometimes take longer as other more likely explanations for the symptoms are often considered first. *Id.* Hepatitis, biliary obstruction with gall stones, pancreatis, and

gastrointestinal viruses are common within the correctional setting. UMF 23. As such, it was proper for Dr. Ek to consider conditions such as these as the potential causes of Plaintiff's symptomology. *Id.* The evaluation, management, diagnosis, and treatment of Plaintiff's complained of condition by Dr. Ek was medically appropriate and met the standard of care applicable under the circumstances. UMF 24. No act or omission of Dr. Ek caused Plaintiff any undue harm, pain, or suffering. UMF 25. No act or omission of Dr. Ek caused any undue, unreasonable, or improper delay in Plaintiff's treatment or diagnosis. UMF 26. The time which elapsed between the initial presentation of symptoms and the diagnosis of heart failure was not improper or unusual under the circumstances presented. *Id.* No act or omission of Dr. Ek had any negative effect upon Plaintiff's ultimate treatment or outcome for the condition complained of. UMF 27. There is no indication that, had Plaintiff been diagnosed earlier, his treatment or outcome would have been any better. *Id.* No act or omission on the part of Dr. Ek caused any delay in treatment, undue pain or suffering, degradation of Plaintiff's condition, nor any poor outcome for Plaintiff. UMF 28. Each time Plaintiff presented to Dr. Ek he provided medical treatment which he believed to be medically appropriate and within the standard of care. UMF 30.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe

the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

"The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, 'to provide adequate medical care to incarcerated individuals.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Dominguez*, 5 F.4th at 824 (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

"To be 'serious,' a medical condition must be one that a physician has diagnosed as needing treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quotation omitted). "To show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it. Deliberate indifference requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm." *Id.*

**B**

No reasonable jury could conclude from this record that Dr. Ek exhibited deliberate indifference to Plaintiff's serious medical needs. Physicians do not practice with a crystal ball. *Sanville v. McCaughtry*, 266 F.3d 724, 736 (7th Cir. 2001). The parties present opposing affidavits as to whether Dr. Ek "ignored" Plaintiff.

At first blush this may look like a dispute of material fact. It is not. Plaintiff is not, and cannot be, aware of Dr. Ek's mental state. It is undisputed, as discussed in more detail below, that Dr. Ek exercised his medical judgment in responding each time Plaintiff's situation was presented to him. Plaintiff's subjective perception that he was "ignored" by Dr. Ek cannot carry the day where it is simultaneously undisputed that "the evaluation, management, diagnosis, and treatment of Plaintiff's complained of condition by Dr. Ek was medically appropriate and met the standard of care applicable under the circumstances." UMF 24.

The Court assesses each interaction in more detail as follows.

Plaintiff has demonstrated that a nurse called Dr. Ek and reported a "very abnormal EKG" on October 24. The specifics of that test are not before the Court. It is undisputed that "Dr. Ek took the report from the nurse and used his medical judgment to prescribe Metoprolol daily for one year and a one-time dose of Clonidine." That exercise of medical judgment precludes a finding of deliberate indifference as to that interaction with Dr. Ek. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner."). That initial interaction presents perhaps the closest call in this case, but where Dr. Ek's exercise of medical judgment is uncontested, and as there is no evidence that a "minimally competent professional" must have made a different decision, there is no deliberate indifference. *Roe v. Elyea*, 631 F.3d 857-858 (7th Cir. 2011).

When Plaintiff presented with ongoing concerns on November 7, Dr. Ek used his medical judgment to determine that Plaintiff was likely suffering from a viral illness, and that he was stable, while also ordering a chest x-ray. Again Dr. Ek's undisputed exercise of medical judgment bars a finding of Eighth Amendment liability. Plaintiff does not explain how the x-ray results, Dkt. 100-1,

would require a minimally competent physician to take some course of action different than Dr. Ek took.

On November 30, Plaintiff was seen by a nurse in connection with complaints of vomiting, and after evaluation the findings were reported to Dr. Ek who, in response, ordered that Plaintiff undergo a panel of labs to further assist in diagnosing any ailments. When Plaintiff was seen by a nurse on December 2 with complaints of pain in his legs, pitting edema, and shortness of breath, the occurrence was reported to Dr. Ek, who then ordered Plaintiff be presented for an exam. As a result, Dr. Ek saw Plaintiff on December 7, heard his complaints, and performed an examination. In consideration of all the information available to him, it is undisputed that Dr. Ek used his medical judgment to determine that Plaintiff may be suffering from hepatitis, and so ordered labs for hepatitis C, prescribed Zofran for one month, ordered an ultrasound of the liver, and ordered that Plaintiff follow up in two weeks.

These professional conclusions proved to be incorrect, in hindsight, but that is not the standard for a violation of the Eighth Amendment. And again missing from the record is any reference to admissible evidence to demonstrate that no minimally competent physician would have so acted. The reasonableness of these decisions is underscored by the undisputed fact that heart disease of the kind experience by Plaintiff is very rare in persons of his age.

Finally, when Dr. Ek learned on December 15 that on December 14 Plaintiff had presented with an elevated heart rate, it is once again undisputed that Dr. Ek performed a review of Plaintiff's chart to determine the lab results and necessary next steps, and that considering all the information available to him, Dr. Ek used his medical judgment to determine that Plaintiff may be suffering from a possible gallstone with biliary 5 obstruction, and as such, at 5:50 p.m. on December 15, Dr. Ek found it best to have Plaintiff sent to the emergency department the next

morning for further work up, which was effected, and which resulted in Plaintiff's final diagnosis and additional treatment. As stated previously, while Dr. Ek missed the mark, he cannot be said to have exhibited deliberate indifference.

Plaintiff asserts that Dr. Ek declined to send him to the hospital sooner, even though Plaintiff asked to be so referred. But a physician is not required by the Constitution to heed a patient's treatment preference or specific request. *See, e.g., Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist). Declining to order specific treatment constitutes deliberate indifference only if "blatantly inappropriate." *Id.*; *Norwood v. Ghosh*, 723 F. App'x 357, 365–66 (7th Cir. 2018) (affirming summary judgment in favor of physician's assistant where there was no "specific evidence that [the physician's assistant] persisted in a course of pain treatment that was obviously inadequate"). Plaintiff has not established that Dr. Ek's treatment decisions were "blatantly inappropriate," or even below the established standard of care he owed to Plaintiff.

**III**

For the reasons set forth above, Defendant's Motion for Summary Judgment [74] is GRANTED. Judgment to enter for Defendant and against Plaintiff.

*It is so ordered.*

Entered: September 25, 2026

s/Jonathan E. Hawley
U.S. District Judge